IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL TALIEFERRO | * | |
| Petitioner, | | |
| v. | * | CIVIL ACTION NO. WMN-05-533 |
| JOSEPH SACCHET, *et al.* | * | |
| Respondents. | | |
| | ****** | |

## MEMORANDUM

Petitioner filed a Petition for writ of habeas corpus relief under 28 U.S.C. §2254, challenging his 2002 conviction in the Circuit Court for Baltimore City for second degree murder. Presently before the Court are the Petition, Respondents' Answer and exhibits, and Petitioner's Reply. Paper No. 1; Paper No. 7, Exs. 1-12, and Paper No. 9. Upon review of the pleadings, the court finds no need for an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2); Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*. For reasons that follow, the Petition is hereby denied.

### I. PROCEDURAL HISTORY

On May 22, 2001, Petitioner was indicted on charges of first and second degree murder, carrying a concealed deadly weapon, and use of deadly weapon with intent to injure. Paper No. 7, Ex. 1. On November 30, 2001, Petitioner pled guilty to second degree murder during proceedings before Circuit Court Judge Allen L. Schwait. *Id*., Ex. 2. Prior to Judge Schwait's acceptance of the plea, defense counsel Creston Smith conducted a plea colloquy regarding Petitioner's personal history and the absence of any pharmacological and mental health impairments. Thereafter, the following exchange occurred between Petitioner and Mr. Smith:

    Counsel:    Mr. Talieferro, subject to the plea negotiations that we've had today
                  is it your understanding, sir, that you're tendering a plead of guilty to

|  |  |
|---|---|
|  | count one of the indictment against you, that the count that is being called is second degree murder?<br><br>Is that your understanding sir? |
| Defendant: | Yes. |
| Counsel: | Now, you need to be advised, sir, that second degree murder carries a maximum incarceration of up to 30 years.<br><br>You understood that, correct? |
| Defendant: | Yes. |
| Counsel: | Now, the state, in order to prove you guilty of second degree murder, would have to prove either that you intended to kill the victim in this case, Mr. Earnest Woods, or that you intended to inflict such bodily harm that that was the likely result.<br><br>Do you understand what the state would have to produce in terms of proving second degree murder? |
| Defendant: | Yes. |
| Counsel: | Okay.  Now, and you understood the maximum penalty? |
| Defendant: | Yes. |
| Counsel: | Now, in return for our plea of guilty the court is going to postpone the disposition of sentencing in this case to a future date.  The court is going to request that a presentence investigation be developed and submitted to the court.<br><br>We will get a copy and the state will get a copy.  At that disposition the court today is binding itself to a sentence of 30 years.  The court will suspend 10 of those years.  It means you would face a maximum incarceration of 20 years.  We have the right to argue for less than 20 years of incarceration.<br><br>Do you understand that? |
| Defendant: | Yes. |
| Counsel: | Upon your release from that incarceration you would be placed on supervised probation.  That is likely to be five years of probation, but we have the right to argue for less than that. |

|  |  |
|---|---|
|  | Do you understand that? |
| Defendant: | Yes. |
| Counsel: | Now, you understand, sir, and we've discussed this option at the detention center and here this morning, that you do not have to enter into this guilty plea agreement.<br><br>Do you understand that? |
| Defendant: | Yes. |
| Counsel: | You can plead not guilty, and if you plead not guilty we would proceed to trial. We would proceed to trial on first degree murder, second degree murder, manslaughter, and deadly weapons offenses.<br><br>Do you understand that? |
| Defendant: | Yes. |

Paper No. 7, Ex. 2 at 9-11.

Counsel then proceeded to inform Petitioner of the standards of review if the case proceeded to trial before a judge or jury and the rights waived and sentence to be imposed under the plea. *Id*., Ex. 2 at 11-18. Petitioner was further questioned about the adequacy of his representation and the voluntariness of his plea. *Id*., Ex. 2 at 19-20. Subsequent to the aforementioned plea colloquy, the following facts were offered by the prosecutor and accepted by Judge Schwait:

> It was May 5th of the year 2001, Your Honor. Earnest Woods was driving a blue Dodge Intrepid.
>
> In the vehicle with him were two gentlemen later identified as the defendant, Michael Talieferro, as well as Mr. Emmitt Barclay (phonetic). There came a point in time, Your Honor, around 2:00 p.m. in the afternoon when Mr. Woods drove the car into an Amoco gas station in the 4600 block of Edmondson Avenue in Baltimore City.
> At that point in time both Mr. Talieferro and Mr. Barclay exited the vehicle. One of the people the state would call, Your Honor, as a witness to what happened is a Michelle Sturett (phonetic). Ms. Sturett was also at the Amoco station getting gas.


Ms. Sturett would testify to the following, Your Honor: That she saw two individuals exit the blue Dodge Intrepid, one individual about six foot four dressed in all yellow, another individual about five ten or five nine dressed in all blue.

Later the gentlemen identified in all yellow would be Emmitt Barclay, the gentleman identified in all blue is Mr. Talieferro, that they left the vehicle and began to walk east on Edmondson Avenue, Your Honor.

At this point in time Mr. Woods confronted them and Ms. Sturett said he outstretched his hand and asked for five more dollars. At that point in time words were exchanged between Mr. Barclay, Mr. Talieferro, and Mr. Woods.

At that point in time, Your Honor, Ms. Sturett would testify Mr. Woods, who is the victim in this case, went back to the Dodge Intrepid, got a bottle from his vehicle, and confronted Mr. Talieferro and Mr. Barclay.

Ms. Sturett would also testify at that point in time that Mr. Woods took the bottle and hit Mr. Barclay over the head with the bottle breaking the bottle. The bottle then dropped to the ground.

At that point in time a fight ensued between the individuals. Ms. Sturett said that the two individuals, one in the blue and the one in the yellow, at that point in time appeared to her to be hitting Mr. Woods in a motion on his back and on his sides.

At that point in time she [Ms. Sturett] saw no weapons in their hands until later on. She said that the fight carried out onto Edmondson Avenue and then back in. She did not know that they had knives until later on. She states that the individual in blue clothing she saw with a knife in her (sic) hand at some point in time.

At that point in time Mr. Woods came back to the Amoco station and collapsed on the pavement close to the phone booth. Ms. Sturett would also state at that point the individual in blue as well as the individual in yellow fled east on Edmondson Avenue.

At that point the gentleman she was with, Mr. Reginald Ingrim (phonetic), called police and called 911. The state would also call two other individuals, a Mr. Tom Banner and Jeffrey Elliott. Mr. Banner and Mr. Elliott were passing by in their vehicle at the point in time when this fight was ensuing, Your Honor.

Mr. Banner and Mr. Elliott would both testify that they saw the individuals, the three of them come out into the street on Edmondson Avenue, and that it appeared to them that the individual in the white T-shirt, who is Mr. Woods in this case, appeared to be trying to get away from both Mr. Talieferro and Mr. Barclay

4

towards the sidewalk and the gas station of the Amoco station in the 4600 block of Edmondson Avenue.

They both would testify that they did not see any weapon at the beginning, but that Mr. Talieferro and Mr. Barclay continued to hit and strike Mr. Woods both on the back on the head region as Mr. Woods struggled to try to get back towards the side of the road.

They kept driving and drove to a 7-Eleven where they were going to call the police as well, Your Honor. At the point in time Mr. Banner exited the vehicle to call the police he saw the two individuals that had been assaulting Mr. Woods, Mr. Talieferro and Mr. Barclay, coming down the street towards the 7-Eleven.

At that point in time he got back into the vehicle and they watched them run by the 7-Eleven towards an apartment complex. As I stated, Mr. Ingrim called 911. At that point in time a broadcast went out of a description of the two assailants of Mr. Woods.

That was picked up by Mr. Morrison Chess, who was a security agent for the apartment complex just off of Edmondson Avenue. At that point in time Mr. Chess noticed Mr. Talieferro and Mr. Barclay fitting the description of the taller gentleman in yellow and shorter gentleman in blue of the assailants that was broadcast by the Baltimore City Police Department.

At that time -- at that point in time Mr. Chess radioed the other security agents of the apartment complex that they were entering the complex and that they should be held and arrested. At that point in time, Your Honor, Mr. Chess took off after both Mr. Talieferro and Mr. Barclay along with Captain Phillips and Lieutenant Dailey (phonetic).

At that point in time Mr. Chess confronted both Mr. Talieferro and Mr. Barclay. Mr. Chess would testify that the individual in all blue, Mr. Talieferro, had a knife in his hands. Mr. Chess is an armed security guard, instructed Mr. Talieferro to drop the knife, which Mr. Talieferro did at that point in time.

They were both placed under arrest by Morrison Chess and Captain Phillips where they awaited the arrival of Baltimore City Police Department. Officer Alexander was called to the scene of the crime, Your Honor. He responded to the Amoco station.

He recovered the box cutter at the scene that was dropped by Mr. Barclay as well as identified the victim at the scene as Mr. Earnest Woods who was transported to the hospital and pronounced dead on arrival, Your Honor.

5

>The state would also call Detective Cherry to the stand. Detective Cherry interviewed Ms. Michelle Sturett about what had happened. Ms. Sturett gave a statement consistent with what the state had proffered earlier.
>
>Ms. Sturett was also shown a photographic array and asked to pick an individual if she saw any that appeared at the scene. Detective Cherry showed a photographic array to Ms. Sturett. Ms. Sturett pointed to one photo and identified it and said, amongst other things, "This was the guy that I seen stab the victim."
>
>Detective Cherry would testify that the picture Ms. Sturett picked out was that of the defendant seated next to Mr. Smith at trial table, Mr. Michael Talieferro. The state would also call, Your Honor, the chief medical examiner who performed the autopsy, Mr. Talieferro (sic).
>
>Dr. Fowler, who will be certified as an expert in the area of forensic pathology, would testify, Your Honor, that Mr. Earnest Woods died of multiple stab wounds to the side and the back and the manner of death was a homicide, Your Honor, due to the stab wounds inflicted by the individual.
>
>Detective Cherry also interviewed, Your Honor, the defendant Mr. Talieferro, and Mr. Talieferro was administered his Miranda rights, stated he understood them and agreed to talk to Detective Cherry. He gave a detailed statement, some of which, Your Honor, he admitted to having the knife, he admitted to stabbing Earnest Woods.
>
>Mr. Talieferro stated he did that because he and his friends were assaulted with a bottle. He didn't know how many times he stabbed Mr. Woods, but explained in his mind that he did it in his own self-defense, and that would be the statement of facts for the state, Your Honor.

Paper No. 7, Ex. 2 at 21-27.

There were no substantive exceptions, modifications, or amendments to the factual statement. Judge Schwait found Petitioner guilty beyond a reasonable doubt based upon the statement of facts and the voluntary guilty plea. *Id*., Ex. 2 at 28.

On April 15, 2002, when Petitioner appeared for sentencing, he asked to be given new counsel and to withdraw his plea. *Id*., Ex. 3 at 3-10. The requests were denied. *Id*., Ex. 3 at 10-16. Petitioner received a 30-year sentence, all but 20 years suspended, with five years probation upon release. Paper No. 1 at 1; Paper No. 7, Ex. 3 at 19-21.

6

As was his right, Petitioner filed an appeal with the Court of Special Appeals of Maryland, claiming that the charge of murder should have been reduced to manslaughter because he "was attacked by the victim first."  Paper No. 7, Ex 4.  On December 16, 2002, the Court of Special Appeals denied the application for leave to appeal.  *Id*., Ex. 5.

On May 8, 2003, Petitioner filed a pro se petition for post-conviction relief.  *Id*., Ex.6.  He raised the following claims:

> A. Petitioner was deprived of his Sixth and Fourteenth Amendment right to counsel when the trial court failed to substitute counsel or to permit the opportunity for petitioner to secure private counsel after acknowledging petitioner's motion to withdraw his guilty plea citing ineffective assistance of counsel;
>
> B. Petitioner was deprived of his due process and equal protection rights when the trial court denied petitioner's request to withdraw his guilty plea before sentencing;
>
> C. Petitioner received ineffective assistance of counsel and [was denied] his right to a fair and impartial trial as guaranteed by the Sixth Amendment when counsel failed to investigate the facts of the case before advancing plea negotiations;
>
> D. Petitioner received ineffective assistance of counsel in that legal counsel did not ensure that petitioner was advised and understood his right to withdraw his guilty plea before sentencing under Maryland Rule 4-242(2); and
>
> E. Petitioner's guilty plea was not free and voluntary in that the plea was tainted by ineffective assistance of counsel.

*Id*.

In his first supplemental post-conviction petition, filed by counsel, Petitioner complained that his plea was not voluntary as it had been improperly coerced by the trial court.  *Id.*, Ex. 7.  In a second supplement, also filed by counsel, Petitioner complained that his right to file a motion for modification under Maryland law had been denied, either by clerk error or by virtue of ineffective assistance of counsel.  Paper No. 7, Ex. 8.

At the conclusion of an October 14, 2003 post-conviction hearing, Baltimore City Circuit Court Judge John Prevas orally denied relief. *Id.*, Ex. 9. A written finding was issued on May 17, 2004. *Id.*, Ex. 10. In his counseled application for leave to appeal, Petitioner sought to challenge Judge Schwait's actions, complaining that the trial court had exceeded the permissible bounds of judicial participation in the plea bargaining process and that Judge Schwait's remarks at the time of the plea were so coercive as to render Petitioner's plea involuntary. *Id.*, Ex. 11. Leave to appeal was denied by the Court of Special Appeals on November 29, 2004. Id., Ex. 12.

The instant § 2254 Petition was received for filing on February 23, 2005. It raises the following grounds:

1. Petitioner was sentenced without a court determination that he had intelligently and competently waived his right to counsel;

2. Petitioner's guilty plea was not voluntarily made; and

3. Trial counsel rendered ineffective assistance by failing to ensure that Petitioner's guilty plea was knowingly and intelligently entered.[1]

Paper No. 1.

## II. THRESHOLD CONSIDERATIONS

### A. Exhaustion of State Remedies

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. This exhaustion requirement is satisfied by "fairly presenting" the claims in each state court so as to obtain review in the highest state court with jurisdiction to consider the claims. *See* 28 U.S.C. §2254(b) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-49 (1999); *Gray v. Netherland*, 518 U.S. 152, 161-65

---

[1] Petitioner complains that counsel did not : (i) fully explain the nature of the charges and the plea; (ii) ask Petitioner whether he agreed to the state's factual statements; and (iii) ask Petitioner if he had received a copy of the charging document. Paper No. 1.

(1996); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). As Petitioner no longer has any state direct appeal or post-conviction remedies available to him with respect to the claims before this Court, his claims will be considered exhausted for the purpose of federal habeas corpus review.

### B.  Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. at 749-50 (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal the denial of post conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray v. Carrier*, 477 U. S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S. 298, 314 (1995).

### C. Standard of Review

Because this petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001). AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *See Bell v. Cone*, 535 U.S. 685, 693 (2002). Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*). In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law, when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410.

10

Further, federal courts give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### III. PETITIONER'S CLAIMS

**A. Absence of Trial Court Determination as to Voluntariness of Waiver of Counsel**

During sentencing, Petitioner indicated that he wished to withdraw his plea. In addition, defense counsel indicated that Petitioner also wished to be represented by someone else. Petitioner claims that Judge Schwait never made a determination that he had intelligently waived counsel before proceeding with sentencing. Respondents argue that the claim is procedurally defaulted because there is some question as to whether it was raised on post-conviction review and, even if it was, the allegation was undoubtedly abandoned when Petitioner filed for leave to appeal Judge Prevas's post-conviction decision. Petitioner states that the claim was raised on collateral review, but admits that it was not presented to the Court of Special Appeals.

The court finds that this precise claim was not presented before Judge Prevas on post-conviction review[2] and, even assuming that it was argued in some form before the post-conviction

---

[2] The record shows that on post-conviction review, Petitioner claimed that: (i) he was deprived of his right to counsel when Judge Schwait failed to substitute counsel or to permit Petitioner the opportunity to secure private counsel after acknowledging Petitioner's motion to withdraw and (ii) he was deprived of due process and equal protection when Judge Schwait denied his request to withdraw his guilty plea before sentencing. Paper No. 7, Ex. 6.

11

court, the record shows that it was not presented in Petitioner's application for leave to appeal to the Court of Special Appeal. Consequently, this ground is procedurally defaulted.

### B. Voluntariness of Plea

Petitioner complains that he was not adequately advised of the nature and elements of the crime to which he was pleading guilty and appears to further argue that there was an inadequate factual basis for a finding of guilt with regard to the charge of second degree murder. Respondents assert that these claims are procedurally defaulted due to Petitioner's failure to raise them in his application for leave to appeal from Judge Prevas's post-conviction decision. In his reply Petitioner states that "clearly the voluntary nature of Petitioner's plea was in fact raised in this application for leave to appeal." The court has examined the appeal application and finds that these claims were not raised in the application for leave to appeal before the Court of Special Appeals. *See* Paper No. 7, Ex. 11. Therefore, these claims are likewise procedurally defaulted.[3]

### C. Ineffective Assistance of Trial Counsel

Petitioner claims that he received ineffective assistance, alleging that Creston Smith failed to adequately explain the intent element of second degree murder and failed to advocate Petitioner's case after the factual basis of the plea was placed on the record.

In their Answer, Respondents asserts that Petitioner is procedurally defaulted from asserting these Sixth Amendment claims because, although raised in his post-conviction petition, these claims

---

[3] Alternatively, after a thorough review of the plea hearing testimony and colloquy before Judge Schwait, as well as the post-conviction hearing transcript, the court finds that the record supports Judge Prevas's finding that the plea was voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242-244 (1969); *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). Plainly, Petitioner was provided notice of the nature and elements of the offense. The undersigned sees no reason to overturn Judge Prevas's determination. *See* 28 U.S.C. § 2254(d). Further, the facts proffered by Assistant State's Attorney Rafter were sufficient to establish that Petitioner was guilty of second degree murder.

were not raised by Petitioner in his application for leave to appeal from the denial of post-conviction relief. Petitioner concedes this point. This ground is procedurally defaulted.[4]

### D. Review of Defaulted Claims

Although all three grounds are procedurally defaulted, the court must consider whether it should reach the merits of these defaulted claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 at 318-20. The miscarriage of justice standard is directly linked to innocence. *Id*. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 496; *Schlup*, *supra*. To meet this standard, petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327.

---

[4] To establish a claim of ineffective assistance of counsel, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). With regard to the first prong of this test, this court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. All circumstances are to be considered, and this Court's scrutiny of counsel's conduct must be "highly deferential." *Id*. at 688-89. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In the context of a guilty plea, the voluntariness of the plea depends on whether the advice given by counsel was within the range of competence demanded of attorneys in criminal cases. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, in order to satisfy the second prong of *Strickland*, a petitioner who pled guilty must show that there is a reasonable probability that but for counsel's errors, petitioner would not have pled guilty and instead insisted on going to trial. *Id*.

Even were this court to substantively rule on this Sixth Amendment ground, it would find the claims to be without merit. The plea hearing record shows that defense counsel adequately advised Petitioner of the intent element of second degree murder. Paper No. 7, Ex. 2 at 9-21. Further, in light of the evidence proffered by the state to prove its case, Petitioner has failed to demonstrate that counsel's actions prejudiced his case and that counsel inadequately advocated on his behalf after the state's factual proffer.

13

Petitioner has failed to make the requisite demonstration of the the existence of cause for his failure to properly raise his grounds in the state courts and the prejudice resulting from this failure. He has presented no evidence, nor suggested that any exists, which could satisfy the demanding standard set forth in *Schlup*. Petitioner's claims are, therefore, foreclosed from federal habeas review.

## IV. CONCLUSION

For the reasons stated herein, the instant Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice. A separate Order follows.

Date: September 29, 2005

/s/
_____
William M. Nickerson
Senior United States District Judge